**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: May 20, 2024.**



_____
**SHAD M. ROBINSON**
**UNITED STATES BANKRUPTCY JUDGE**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| IN RE: | § | CASE NO. 23-10736-SMR |
|---|---|---|
| | § | |
| SAL ATX LLC, | § | |
| | § | |
| DEBTOR | § | CHAPTER 7 |

| IN RE: | § | CASE NO. 23-10737-SMR |
|---|---|---|
| | § | |
| MAYA J ATX LLC, | § | |
| | § | |
| DEBTOR | § | CHAPTER 7 |

### CONSOLIDATED MEMORANDUM OPINION ON MOTIONS TO EXTEND DEADLINES AND FOR RECONSIDERATION OF ORDERS CONVERTING CASES

Pending before the Court are two Motions to Extend Deadlines and for Reconsideration of Orders Converting Cases (collectively, the "Motions to Reconsider")[1]: one filed by SAL ATX LLC ("SAL") in Case No. 23-10736 (the "SAL Bankruptcy") and the other filed by MAYA J ATX LLC ("MAYA") in Case No. 23-10737 (the "MAYA Bankruptcy"). The SAL Bankruptcy and

---

[1] Case No. 23-10736, ECF No. 287; Case No. 23-10737, ECF No. 271.

MAYA Bankruptcy are separate and distinct bankruptcy cases but involve closely related facts, evidence, witnesses, and issues. On April 26, 2024, the Court conducted a consolidated hearing on the following motions:

1.      SAL ATX LLC's Motion to Extend Deadlines and for Reconsideration of Order Converting Case (the "SAL Motion to Extend and Reconsider");[2] and

2.      MAYA J ATX LLC's Motion to Extend Deadlines and for Reconsideration of Order Converting Case (the "MAYA Motion to Extend and Reconsider").[3]

## I.    INTRODUCTION

On September 29, 2023, the United States Trustee (the "UST") filed a Motion to Dismiss or Convert the SAL Bankruptcy because SAL failed to timely file its schedules pursuant to Federal Rule of Bankruptcy Procedure 1007(c) and did not provide other information requested by the UST.[4]

On September 29, 2023, the UST filed a Motion to Dismiss or Convert the MAYA Bankruptcy because MAYA failed to timely file its schedules pursuant to Rule 1007(c)[5] and did not provide other information requested by the UST.[6]

On November 1, 2023, the Court entered separate Agreed Orders[7] in the SAL Bankruptcy and MAYA Bankruptcy on terms agreed to and requested by the parties (the "Agreed Orders"). The Agreed Orders memorialized the UST's agreement with SAL and MAYA, respectively. The Agreed Orders (1) set deadlines for SAL and MAYA to each file a disclosure statement and plan,

---

[2] Case No. 23-10736, ECF No. 287.
[3] Case No. 23-10737, ECF No. 271.
[4] Case No. 23-10736, ECF No. 9.
[5] The Court will refer to the Federal Rules of Bankruptcy Procedure as simply "Rule…" while referring to the Federal Rules of Civil Procedure as "FRCP…".
[6] Case No. 23-10737, ECF No. 7.
[7] Case No. 23-10736, ECF No. 39; Case No. 23-10737, ECF No. 39.

(2) set deadlines for SAL and MAYA to each file an application to employ appraiser, (3) required

SAL and MAYA to timely file monthly operating reports ("MORs"), and (4) required SAL and

MAYA to timely pay UST quarterly fees pursuant to 28 U.S.C. § 1930(a)(6). Both Agreed Orders

further provided that a failure to comply would result in conversion of the chapter 11 case to a case

under chapter 7, without further notice and hearing, upon the UST filing a Notice of Non-

Compliance[8] with the Court.

On March 27, 2024, the UST filed a Certificate of Non-Compliance[9] in each bankruptcy

case stating that SAL and MAYA (collectively, the "Debtors") had violated the terms of the

Agreed Orders.[10] The consequence of violating the Agreed Orders, according to the agreement of

the parties and expressly provided for in the Agreed Orders, is conversion to chapter 7.[11] The Court

reviewed the UST's original Motions to Dismiss or Convert,[12] the Debtors' responses to the

Motions to Dismiss or Convert,[13] Magnolia BridgeCo, LLC and Cypress BridgeCo, LLC's

responses to the Motions to Dismiss or Convert,[14] the Agreed Orders, the Certificate of Non-

Compliance, and the Debtors' Responses.[15] After its review of the record, the Court signed orders

converting both Debtors' cases to chapter 7 (the "Conversion Orders").[16] The Conversion Orders

---

[8] The Agreed Orders used the word "Notice" instead of "Certificate," but the intent of the Agreed Orders is clear. For purposes of the Court's conclusion, it does not matter whether it was a "Notice" or "Certificate." The result is the same.

[9] Case No. 23-10736, ECF No. 242; Case No. 23-10737, ECF No. 226. While a Certificate of Non-Compliance was entered separately in each bankruptcy case, the two Certificates of Non-Compliance are virtually identical and will be referred to in the singular as the "Certificate of Non-Compliance" for readability. The Certificate of Non-Compliance stated that both Debtors had failed to timely file their February monthly operating reports and had failed to pay UST fees for the fourth quarter of 2023.

[10] Case No. 23-10736, ECF No. 39; Case No. 23-10737, ECF No. 39. The Agreed Orders entered separately in each bankruptcy case are virtually identical to each other.

[11] Case No. 23-10736, ECF No. 39 at 2; Case No. 23-10737, ECF No. 39 at 2.

[12] Case No. 23-10736, ECF No. 9; Case No. 23-10737, ECF No. 7.

[13] Case No. 23-10736, ECF No. 23; Case No. 23-10737, ECF No. 26.

[14] Case No. 23-10736, ECF No. 20; Case No. 23-10737, ECF No. 20.

[15] Case No. 23-10736, ECF No. 245; Case No. 23-10737, ECF No. 228.

[16] Case No. 23-10736, ECF No. 269; Case No. 23-10737, ECF No. 252.

were signed and entered on April 3, 2024.

## II.  **CONTENTIONS OF THE PARTIES**

On April 8, 2024, the Debtors filed their Motion to Reconsider requesting that the Court reconsider the Conversion Orders.[17] SAL and MAYA argue that even though they admittedly missed the required deadlines in violation of the terms of the Agreed Orders, the Court should reconvert their cases back to chapter 11 and extend the relevant deadlines because of excusable neglect.[18] The Debtors moved for relief under Rule 9023. On April 26, 2024, the Court held a hearing on the Motions to Reconsider (the "April 26 hearing"), where Debtors' counsel also asked for relief under Rules 9024 and 9006.

In response to the Debtors' Motions to Reconsider, the UST asserts that to prevail on a Motion to Reconsider under Rule 9023[19] the Debtors have the burden of establishing one of the following: (1) an intervening change in controlling law; (2) the availability of new evidence not previously available; or (3) the need to correct a clear error of law or prevent manifest injustice.[20] The UST argues that the Debtors did not establish any of the above three elements. At the April 26 hearing, the UST responded to the Debtors' contention that the Court should consider excusable neglect under Rule 9024 and 9006 by arguing (1) that the Debtors did not properly move under Rule 9024 in their pleadings, and (2) even under Rule 9024 and 9006, the Debtors did not meet their burden because the evidence showed that both Debtors were well aware of the deadlines in the Agreed Orders and simply did not comply with them.

---

[17] *See CARBO Ceramics, Inc. v. Bd. of Tax Assessors for Wilkinson Cnty. Ga. (In re CARBO Ceramics, Inc.)*, No. 20-31973, 2024 WL 505159, at *1 (Bankr. S.D. Tex. Feb. 8, 2024) ("If a motion for reconsideration is filed within 14 days of the judgment or order of which the party complains, it is considered a Rule 59(e) motion; otherwise, it is treated as a Rule 60(b) motion.").

[18] Case No. 23-10736, ECF No. 287 at 2; Case No. 23-10737, ECF No. 271 at 2.

[19] Federal Rule of Bankruptcy Procedure 9023 incorporates Federal Rule of Civil Procedure 59 into bankruptcy proceedings.

[20] Case No. 23-10736, ECF No. 300 at 4; Case No. 23-10737, ECF No. 288 at 4.

Secured Creditors Magnolia BridgeCo, LLC and Cypress BridgeCo, LLC (collectively "BridgeCo")[21] contend that the "excusable neglect" standard should not apply because the Debtors moved for relief under Rule 9023, not Rule 9024.[22] BridgeCo also contends that even if the Court considers excusable neglect, the Debtors' behavior is not excusable because the Debtors certainly knew about the relevant deadlines at this point in the nearly eight-month-old cases, and the Debtors did not attempt to cure their error until after the UST had filed its Certificate of Non-Compliance.

## III.    ISSUES PRESENTED

The first issue is whether the deadlines for SAL and MAYA to file their February 2024 monthly operating reports and pay UST quarterly fees should be extended *after* the deadlines have expired.

The second issue is whether the Court should reconsider its prior orders converting the SAL Bankruptcy and MAYA Bankruptcy to chapter 7.[23]

## IV.    HOLDING

The Court holds that the deadlines for SAL and MAYA to file their February monthly operating reports and pay quarterly fees will not be extended because SAL and MAYA failed to establish that their failure to comply with the deadlines in the Agreed Orders was the result of "excusable neglect" pursuant to Rule 9006(b)(1).

The Court further holds that it will not reconsider the orders converting SAL and MAYA's bankruptcy cases to chapter 7, because SAL and MAYA's arguments and evidence do not satisfy

---

[21] Magnolia BridgeCo, LLC filed Claim No. 2-1 in SAL's bankruptcy. Both Magnolia BridgeCo, LLC, and Cypress BridgeCo, LLC, filed claims in MAYA's bankruptcy: Magnolia BridgeCo filed Claim No. 3-1, while Cypress BridgeCo filed Claim No. 2-1.

[22] Case No. 23-10736, ECF No. 301 at 7-8; Case No. 23-10737, ECF No. 289 at 7-8.

[23] At the April 26 hearing it was suggested that the Court should first decide the Debtors' request to reconsider because if the Court denied reconsideration of the Conversion Orders, then the Debtors' request to extend deadlines would be moot. The Court considered all relief arguably requested in the Motions to Extend and Reconsider and is denying all relief requested for the reasons discussed herein.

the standards for relief under Rule 9023 or Rule 9024.

## V.     JURISDICTION AND VENUE

The Court finds that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(a) and (b), 11 U.S.C. § 1112, and Federal Rules of Bankruptcy Procedure 9006, 9023, and 9024. This matter is a core proceeding as defined in 28 U.S.C. § 157(b) as it involves matters concerning administration of the estate and enforcement of a bankruptcy court order. Venue is proper under 28 U.S.C. §§ 1408 and 1409. The bankruptcy court has authority to adjudicate this matter pursuant to the District Court's Standing Order of Reference.

## VI.     RELEVANT PROCEDURAL BACKGROUND IN THE SAL BANKRUPTCY

On September 29, 2023, the UST filed a Motion to Dismiss or Convert because SAL failed to timely file its schedules pursuant to Rule 1007(c) and did not provide information reasonably requested by the UST.[24] Rather than go forward with a contested evidentiary hearing, the parties conferred and reached an agreement on terms and deadlines that SAL would comply with going forward in its bankruptcy. The terms of the agreement were described to the Court on the record at a hearing on October 27, 2023. On November 1, 2023, the Court entered an Agreed Order memorializing the agreement of the UST and SAL.[25] The Agreed Order, in pertinent part, required that SAL timely file its MORs and timely pay UST quarterly fees pursuant to 28 U.S.C. § 1930(a)(6).[26]

The Agreed Order further provides that SAL could seek the agreement of the UST to extend any deadline, and if the UST agreed the UST would file a notice of agreement. If the UST did not

---

[24] Case No. 23-10736, ECF No. 9. The following ECF citations shall refer to the SAL bankruptcy until otherwise specified.
[25] ECF No. 39.
[26] *Id.* at 2.

agree to extend a deadline, SAL could seek modification of the deadline upon filing a motion with the Court and showing cause for such extension.[27]

The Agreed Order clearly and unambiguously stated that "Debtor's failure to comply with the Order and the agreed deadlines . . . will result in conversion of this case to a case under Chapter 7 . . . without further notice and hearing, upon the [UST] filing a Notice of Non-Compliance with the Court . . . and an Order Converting Case to a Case Under Chapter 7."[28]

The Court held a hearing on October 27, 2023 and SAL, through its counsel, confirmed that it was consenting to the terms of the Agreed Order. The Court then signed the Agreed Order.[29] SAL never suggested that it misunderstood the terms of the Agreed Order and did not take any action to set aside, dispute, or reconsider the terms of the Agreed Order.

On March 27, 2024, the UST filed its Certificate of Non-Compliance and Order Converting Case to a Case Under Chapter 7 because SAL failed to timely file its February MOR and failed to timely pay UST quarterly fees.[30] SAL filed a response to the Certificate of Non-Compliance, admitting the mistakes and providing some excuses.[31] However, SAL cited no case law in support of its argument against conversion.[32] On April 3, 2024, the Court entered the Order Converting Case to a Case Under Chapter 7.[33] On April 8, 2024, SAL filed its Motion to Extend Deadlines and Reconsider.[34] The UST and BridgeCo filed objections.[35] On April 26, 2024, the Court held a hearing on SAL's Motion to Extend Deadlines and Reconsider and took the matter under

---

[27] *Id.*
[28] ECF No. 39 at 2-3.
[29] ECF No. 39.
[30] ECF No. 242.
[31] *See* ECF No. 245.
[32] *See id.*
[33] ECF No. 269.
[34] ECF No. 287.
[35] ECF No. 300; ECF No. 301.

7

advisement.

## VII. **RELEVANT PROCEDURAL BACKGROUND IN THE MAYA BANKRUPTCY**

On September 29, 2023, the UST filed a Motion to Dismiss or Convert because MAYA failed to timely file its schedules pursuant to Rule 1007(c) and did not provide information reasonably requested by the UST.[36] Rather than go forward with a contested evidentiary hearing, the parties conferred and reached an agreement on terms and deadlines that MAYA would comply with going forward in its bankruptcy. The terms of the agreement were described to the Court on the record at a hearing on October 27, 2023. On November 1, 2023, the Court entered an Agreed Order memorializing the agreement of the UST and MAYA.[37] The Agreed Order, in pertinent part, required that MAYA timely file its MORs and timely pay UST quarterly fees pursuant to 28 U.S.C. § 1930(a)(6).[38]

The Agreed Order further provides that MAYA could seek the agreement of the UST to extend any deadline, and if the UST agreed the UST would file a notice of agreement. If the UST did not agree to extend a deadline, MAYA could seek modification of the deadline upon filing a motion with the Court and showing cause for such extension.

The Agreed Order clearly and unambiguously stated that "Debtor's failure to comply with the Order and the agreed deadlines . . . will result in conversion of this case to a case under Chapter 7 . . . without further notice and hearing, upon the [UST] filing a [Certificate] of Non-Compliance with the Court . . . and an Order Converting Case to a Case Under Chapter 7."[39]

---

[36] Case No. 23-10737, ECF No. 7. The following ECF Numbers will reference the MAYA bankruptcy until otherwise specified.
[37] ECF No. 39.
[38] *Id.* at 2.
[39] *Id.* at 2-3.

The Court held a hearing on October 27, 2023 and MAYA through its counsel confirmed that it was consenting to the terms of the Agreed Order. The Court then signed the Agreed Order.[40] MAYA never suggested that it misunderstood the terms of the Agreed Order and did not take any action to set aside, dispute, or reconsider the terms of the Agreed Order.

On March 27, 2024, the UST filed its Certificate of Non-Compliance and Order Converting Case to a Case Under Chapter 7 because MAYA failed to timely file its February MOR and failed to timely pay UST quarterly fees.[41] MAYA filed a response to the Certificate of Non-Compliance, admitting the mistakes and providing some excuses.[42] However, MAYA cited no case law in support of its argument against conversion.[43] On April 3, 2024, the Court entered the Order Converting Case to a Case Under Chapter 7.[44] On April 8, 2024, MAYA filed its Motion to Extend Deadlines and Reconsider.[45] The UST and BridgeCo filed objections.[46] On April 26, 2024, the Court held a hearing on MAYA's Motion to Extend Deadlines and Reconsider and took the matter under advisement.

## VIII.   <u>FINDINGS OF FACT AND LEGAL ANALYSIS</u>[47]

**1.      The Court will not extend the deadlines under Rule 9006 because the Debtors have not satisfied the test for "excusable neglect" under *Pioneer*.**

The Agreed Orders provide that the deadlines set forth therein can be extended by the UST (in its sole discretion) or by the Court for "cause." The Agreed Orders do not provide for an

---

[40] *Id.*
[41] ECF No. 226.
[42] *See* ECF No. 228.
[43] *See id.*
[44] ECF No. 252.
[45] ECF No. 271.
[46] ECF Nos. 288 and 289.
[47] This Court makes its Findings of Fact and Conclusions of Law under Federal Rule of Civil Procedure 52 as incorporated into Federal Rules of Bankruptcy Procedure 7052 and 9014. To the extent that any Finding of Fact is construed to be a Conclusion of Law, it is adopted as such. To the extent that any Conclusion of Law is construed to be a Finding of Fact, it is adopted as such.

extension of the deadlines after they expire. Notwithstanding the foregoing, the Bankruptcy Court has the authority to extend certain deadlines pursuant to Rule 9006(b)(1), and extending the deadlines to file MORs or pay UST quarterly fees fall within the Court's authority under Rule 9006.[48] However, because the Debtors requested an extension of such deadlines *after* the relevant deadlines had already expired, the Debtors must prove that their neglect in failing to meet the deadlines was "excusable."[49] The Court finds that the Debtors have not satisfied their burden to prove that their reasons for failing to meet these deadlines in these cases constitutes "excusable neglect" under *Pioneer*. Therefore, the deadlines to file MORs or pay UST quarterly fees will not be extended.

### A. The Agreed Order was a voluntary deal binding on the UST and the Debtors.

On September 29, 2023, the UST filed a Motion to Dismiss or Convert (collectively, the "Motions to Dismiss") in both SAL and MAYA's bankruptcies.[50] The basis of the UST's Motions to Dismiss was that both Debtors failed to timely file their schedules and did not provide documents requested by the UST. Prior to the Court's consideration of the Motions to Dismiss, the parties presented the Court with Agreed Orders to enter in both the SAL and Maya bankruptcies. The Agreed Orders (1) set deadlines for SAL and MAYA to each file their respective disclosure statement and plan, (2) set deadlines for SAL and MAYA to file an application to employ an appraiser, (3) required SAL and MAYA to timely file MORs, and (4) required SAL and MAYA to timely pay UST quarterly fees pursuant to 28 U.S.C. § 1930(a)(6). The Debtors voluntarily and unequivocally consented to the terms of the Agreed Orders to avoid a hearing on the Motions to Dismiss.

---

[48] *See* FED. R. BANKR. P. 9006.
[49] *Id.*
[50] Case No. 23-10736, ECF No. 9; Case No. 23-10737, ECF No. 7.

The Agreed Orders clearly and unambiguously stated that a failure to file MORs on time, or a failure to pay UST quarterly fees on time, would result in the conversion of the cases to chapter 7 (provided that the UST requested conversion). The Debtors made this deal with the UST to avoid an evidentiary hearing on the Motions to Dismiss, and the Agreed Orders accurately reflected the terms of that deal. At the October 27, 2023 hearing, Debtors' counsel confirmed that the Debtors agreed with the terms of the Agreed Orders. Accordingly, there is no dispute that the Debtors are bound by the terms of the Agreed Orders.

### B. The Debtors did not keep their end of the deal.

The UST filed its Certificate of Non-Compliance on March 27, 2024, stating that the Debtors had failed to file their MORs on time and had failed to timely pay UST quarterly fees for the fourth quarter of 2023. The MORs were due on March 20, 2024, and the UST fees were due January 31, 2024.[51] The Debtors filed their MORs and paid the UST fees shortly *after* the UST filed its Certificate of Non-Compliance. This shows that the Debtors did not miss the deadlines because of unfortunate events or excusable neglect, but instead were either inexplicably unaware of the deadlines or simply did not care that they were in violation of the Agreed Orders until the UST filed its Certificate of Non-Compliance. Based on the foregoing, there is no dispute that the Debtors defaulted under the terms of the Agreed Orders.

### C. The Debtors' failure to timely file their documents and timely pay UST fees in compliance with the Agreed Orders was not because of "excusable" neglect.

The Debtors stated and the evidence shows that they missed the MOR deadlines "due to confusion between the Debtors and Debtors' counsel."[52] The MORs were due on the 20th day after

---

[51] Local Court Rule 2015(b); 28 U.S.C. § 1930(a)(6)(A).
[52] Case No. 23-10736, ECF No. 287 at 3; Case No. 23-10737, ECF No. 271 at 3.

the conclusion of every month; in this case, the February MORs were due on March 20, 2024.[53] The evidence shows that the Debtors' representative did not sign the February MORs and send them to Debtors' counsel until March 21, 2024.[54] No explanation was given as to why the MORs were not filed prior to the deadline (that is, any time prior to March 20) or even between March 22 and March 27.[55] Indeed, the MORs were not even filed until *after* the UST filed its Certificate of Non-Compliance on March 27.

The Debtors stated and the evidence shows that they failed to timely pay the UST fees for the fourth quarter of 2023 because "[t]he Debtors each paid fees under 28 U.S.C. §1930 for the third quarter of 2023 in October and November 2023. However, the checks did not clear until January 2024 . . . ."[56] The UST fees for the fourth quarter were due on January 31, 2024.[57] The Debtors were therefore in violation of the Agreed Orders from February 1, 2024, through the filing of the Certificate of Non-Compliance on March 27, 2024. No justification was given for the missed UST payments, other than the delay in the clearing of the *third quarter* check from 2023. There was no explanation or evidence presented as to how the delayed clearing of a check for 2023's third quarter UST fees supports a finding of excusable neglect regarding the Debtors' failure to timely pay UST fees for the fourth quarter of 2023.

The Debtors have not asserted—and there is no evidence to suggest—that they did not have notice or were unaware of the requirements and deadlines in the Agreed Orders. The Debtors do not contend that the Agreed Orders were unclear, vague, or that they misunderstood the terms of

---

[53] Local Court Rule 2015(b).

[54] Case No. 23-10736, ECF No. 287 at 3; Case No. 23-10737, ECF No. 271 at 3.

[55] Debtors' counsel testified that he was in Court all day on March 21, 2024; the Court is not stating that this is an acceptable excuse, however, it is at least some justification for a one-day delay. But there was no evidence as to why the MORs were not filed well before the deadline or anytime between March 22 and March 26.

[56] Case No. 23-10736, ECF No. 287 at 3; Case No. 23-10737, ECF No. 271 at 3.

[57] 28 U.S.C. § 1930.

the Agreed Orders. There was no evidence to suggest that the Agreed Orders were entered into based on fraud or misrepresentations made by the UST. To the contrary, the evidence shows that the Debtors voluntarily agreed to the terms and were well aware of the requirements and deadlines set forth in the Agreed Orders.

There was also no evidence presented that the Debtors took appropriate measures to ensure timely compliance with the terms of the Agreed Orders. Given the severe consequences of their failure to comply with the deadlines in the Agreed Orders (conversion of the cases to chapter 7), the Debtors could have (and should have) implemented multiple procedures to ensure that they were in compliance well before the expiration of any deadline. There was no evidence presented of any procedures or safeguards implemented by the Debtors or any actions that were taken to comply before expiration of the deadlines.

The Agreed Orders further provide that SAL and MAYA could seek the agreement of the UST to extend any deadline. If the UST did not agree to extend a deadline, the Agreed Orders provide that Sal and MAYA could seek a modification of the deadline by filing a motion with the Court and showing cause for such extension. Inexplicably, there was no evidence to suggest that either of the Debtors requested that the UST agree to extend the deadlines to file MORs or extend the deadline to pay the fourth quarter 2023 UST fees. Equally baffling is the fact that the Debtors did not make any efforts prior to the expiration of the deadlines to seek an order from this Court extending such deadlines.

Finally, there was no evidence offered to show that the Debtors' failure to comply with the terms of the Agreed Orders was due to circumstances beyond their reasonable control. In fact, the evidence shows that the Debtors (1) had full knowledge of the deadlines, (2) the ability to timely

file the MORs and pay the UST fees for the fourth quarter of 2023, and (3) their ability to do so was exclusively within their control.

### i. The Debtors did not establish "excusable neglect" under *Pioneer*'s four factor test.

The burden to show excusable neglect is on the Debtors.[58] In *Pioneer*, the Supreme Court discussed "excusable neglect" in the context of Rule 9006(b)(1) and a creditor's failure to timely file a proof of claim:

> This leaves, of course, [Rule 9006(b)(1)]'s requirement that the party's neglect of the bar date be "excusable." *It is this requirement that we believe will deter creditors or other parties from freely ignoring court-ordered deadlines in the hopes of winning a permissive reprieve under Rule 9006(b)(1)*. . . . [b]ecause Congress has provided no other guideposts for determining what sorts of neglect will be considered "excusable," *we conclude that the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission.* These include . . . the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.[59]

In these cases, the Debtors are the parties moving for relief; therefore, the Court will consider the danger of prejudice to the non-moving parties rather than the Debtors. Considering the danger of prejudice to the Debtors would of course not make sense in a factual situation where the Debtors are moving for relief. Outside the Rule 9006(b)(1) context, the Fifth Circuit has held that the courts should evaluate the danger of prejudice to the non-moving party when considering excusable neglect.[60]

---

[58] *See In re CJ Holding Co.*, 27 F.4th 1105, 1112 (5th Cir. 2022) ("'The burden to show excusable neglect is on the movant . . . .'") (quoting *In re ValuePart, Inc.*, 802 F. App'x 143, 146 (5th Cir. 2020) (unpublished)).

[59] *Pioneer Inv. Services Co. v. Brunswick Associates Ltd. P'ship*, 507 U.S. 380, 395 (1993) (emphasis added); *see also CJ Holding*, 27 F.4th at 1112 ("In determining whether the Claimants established excusable neglect, we consider the four Pioneer factors: (1) 'the danger of prejudice to the debtor,' (2) 'the length of the delay and its potential impact on judicial proceedings,' (3) 'the reason for the delay, including whether it was within the reasonable control of the movant,' and (4) 'whether the movant acted in good faith.'") (quoting *In re Eagle Bus Mfg., Inc.*, 62 F.3d 730, 737 (5th Cir. 1995)).

[60] *See Halicki v. Louisiana Casino Cruises, Inc.*, 151 F.3d 465, 468 (5th Cir. 1998) (discussing excusable

### a. Extending the deadlines would be prejudicial to the non-moving parties.

The Court finds that extending the deadlines would prejudice the non-moving parties (here the UST and BridgeCo) for two main reasons. First, the UST and BridgeCo relied on the terms of the Agreed Orders and expected that the Debtors would be required to comply when they agreed to resolve the original Motions to Dismiss. Court orders often impact how parties proceed in a bankruptcy case strategically and practically. Granting the Debtors relief from the Agreed Orders here would deprive the UST and BridgeCo the benefit of their bargain. Further, granting the Debtors relief would effectively invalidate the Agreed Orders and allow the Debtors a second chance, notwithstanding the fact that the Debtors' noncompliance was entirely due to their own actions (or failures to act). If the Court were to hold that the Debtors' asserted grounds for excusable neglect in this case justifies extending deadlines after they have expired, then deadline-oriented Agreed Orders have no teeth and are essentially null and void.[61]

Second, extending the deadlines and reconverting the cases to chapter 11 would cause further delay and be prejudicial to the rights of the UST and BridgeCo. In a chapter 11 case, the UST is tasked with several duties, including monitoring the progress of cases, monitoring the debtor's business, ensuring compliance with reporting requirements, and supervising the administration of bankruptcy cases.[62] Extending the deadlines now would undermine the authority of the UST and the UST's ability to appropriately monitor and police bankruptcy cases. Furthermore, BridgeCo relied on the terms of the Agreed Orders and its expectation that the

---

neglect in the context of Federal Rule of Appellate Procedure 5 and altering a quote from *Pioneer* so the first *Pioneer* factor reads "the danger of prejudice to the non-moving party . . . .").

[61] Of course, this would apply equally to all agreed orders. If agreed orders are not enforced and parties are free to comply, not comply, or create their own "excusable neglect" to seek relief, then parties will never enter into agreed orders and courts will not sign agreed orders.

[62] 28 U.S.C. § 586.

deadlines would be timely complied with when it effectively withdrew its request for certain relief related to annulling the automatic stay.[63] Furthermore, extending the deadlines and reconverting the cases to chapter 11 would further delay BridgeCo's ability to exercise its rights against its collateral, further delay payment to BridgeCo (while the debt is substantially increasing daily because of interest accrual), and cause BridgeCo to incur additional attorney's fees and expenses (which could very well be substantial given the contentious procedural history of these case). Granting relief would compromise the authority of the UST and result in additional litigation, delay, and time and expenses to the detriment of the UST and BridgeCo. For these reasons, extending the deadlines now would be prejudicial to the non-moving parties that relied on the terms of the Agreed Orders.

### b. The length of the Debtors' delay and its impact on judicial proceedings weighs against the Debtors.

The Court finds that the length of the Debtors' delay and its potential impact on judicial proceedings also weighs against the Debtors.[64] The Debtors were six days late in filing their February MORs, and fifty-five days late in paying the UST fees for the fourth quarter of 2023. The Debtors filed their Motions to Reconsider five days after the Court entered its Order converting the cases. These are not significant delays if viewed in isolation. However, and of critical importance in this case: the violation of the Agreed Orders is not the Debtors' first failure in these cases to comply with their duties and obligations under the Bankruptcy Code. The Agreed Orders exist in the first place because the Debtors previously failed to timely file reports and provide information to the UST.[65] Extending the relevant deadlines and reconverting these cases to chapter

---

[63] Hearing on October 27, 2023; *see* Case No. 23-10736, ECF No. 35; Case No. 23-10737, ECF No. 36.
[64] *See Pioneer*, 507 U.S. at 395; *see also In re CJ Holding Co.*, 27 F.4th 1105, 1114-15 (5th Cir. 2022).
[65] Case No. 23-10736, ECF No. 9 at 2; Case No. 23-10737, ECF No. 7 at 2.

11 would have a substantial impact on the judicial proceedings in this case. Based on the history of these cases, reconverting would add further delay, impair the rights of the creditors, result in additional prolonged litigation, and result in additional expenses to the detriment of the non-moving parties. In considering this factor, the Court finds that the length of delay disfavors the Debtors because the underlying orders were Agreed Orders, this is the Debtors' second failure to timely comply with required deadlines, and the delay has a significant impact on judicial proceedings because of the procedural posture of this case.[66]

### c. The reason for the delay weighs heavily against the Debtors.

The reason for the delay weighs heavily against the Debtors. The Debtors agreed to the deadlines and then breached those very deadlines. As discussed above, no explanation is given for the breached deadlines other than "miscommunication" regarding the MORs, and a delayed payment for the UST fees from the third quarter of 2023. No medical emergencies, extraordinary circumstances, or events outside of the Debtors' control occurred.[67] As discussed above, the Debtors agreed to the deadlines, the deadlines were clear, and there was no evidence that the Debtors implemented reasonable safeguards or procedures that failed. There was also no evidence as to what measures were taken by the Debtors to comply well before the deadlines expired, and the Debtors did not seek an extension from the UST or this Court before expiration of the deadlines. Compliance with the deadlines and the terms of the Agreed Orders was entirely within the control of the Debtors and the reason for the delay rests squarely on the shoulders of the Debtors and the Debtors' representative(s).

---

[66] See the Court's analysis in subsection (a) above for more discussion about the procedural posture of the case and the impacts of reconverting on the litigation.

[67] There was some mention of computer issues, but the issues were so vague that the Court does not give that claim substantial weight. Additionally, "computer issues" would likely have been avoided had the Debtors not waited until the last minute to try and file documents.

    **d. The Court does not find that the Debtors acted in bad faith in failing to meet the deadlines; however, the weight of the *Pioneer* test is clearly against a finding of excusable neglect.**

The Court does not find that the Debtors acted in bad faith regarding their failure to meet the deadline. However, a deadline violated in good faith is still a deadline violated.[68] The fact that the Debtors filed their documents and made payments late, but in good faith, does not offset the overall analysis the Court has conducted under the *Pioneer* factors. Having considered "all relevant circumstances" the Court holds that the Debtors' neglect in this case does not satisfy the standard for "excusable neglect" under *Pioneer*.[69]

    **ii. The facts of this case do not warrant an extension of the deadlines based on the Court's review of Fifth Circuit case law.**

A conversion from chapter 11 to chapter 7 due to the violation of an agreed order rarely generates case law.[70] However, the facts of the *Brand* case out of the Northern District of Mississippi are similar, therefore it is appropriate for the Court to briefly discuss *Brand* and compare it to the facts in the SAL Bankruptcy and MAYA Bankruptcy.

In *Brand*, the Brands filed a petition under chapter 11 subchapter V.[71] From the beginning of the case, the Brands consistently failed to file their MORs on time.[72] The UST filed a motion to

---

[68] *Buckmire v. Mem'l Hermann Healthcare Sys. Inc.,* 2012 WL 10834, at *1 n.1 (5th Cir. 2012) (finding a missed deadline not "excusable" when the party's attorney received clear notice of the deadline, distinguishing *Buckmire* from *Pioneer*) (unpublished). While *Buckmire* is unpublished, its distinction from *Pioneer* is notable in relation to the facts of this case.

[69] *See Pioneer*, 507 U.S. at 395 (1993) ("We conclude that the determination [of whether neglect is excusable] is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission.").

[70] The Court found just one published case in the Fifth Circuit where this set of circumstances occurred: *In re Advantage Sports Complex, LLC*, No. 20-40667, 2022 WL 4647609, at *2 (Bankr. E.D. Tex. Sept. 30, 2022). However, the *Advantage Sports* opinion focuses on the results of a fraud/conspiracy trial and only mentions conversion from chapter 11 to chapter 7 after the violation of an Agreed Order as part of the case's procedural history. *Id.* at *1-2. The Court did not analyze conversion of the case from chapter 11 to chapter 7. There is a case a bankruptcy court's approach to a violation of an agreed order, *see In re Mohajer 12 Corp.*, No. 18-2674, 2021 WL 287805 (Bankr. S.D. Ala. Jan. 22, 2021).

[71] *In re Brand*, No. 20-12492, 2021 WL 2946145, at *1 (Bankr. N.D. Miss. July 13, 2021).

[72] *Id.*

dismiss or convert based on the Brands' failure to timely file MORs as well as other issues.[73] The

bankruptcy court did not dismiss or convert at that time, but stated in the resulting order:

> [T]he Brands shall timely file all required Monthly Operating Reports and pay all
> required fees. Should the Brands fail to timely file MOR's and pay all required fees,
> the United States Trustee shall file a notice of delinquency, giving the Debtors
> fourteen (14) days to cure the deficiencies. If the Brands do not cure those
> deficiencies within the 14-day time period, this case shall be automatically
> converted to a case under Chapter 7.[74]

The Brands were subsequently late on two MORs but were able to cure within the 14-day period.[75]

However, the Brands filed their third MOR late and did not cure within the 14-day period.[76] The

UST filed its notice of delinquency, the Court converted the case to chapter 7, and the Brands filed

a motion to reconsider.[77]

At the hearing on the motion to reconsider, the Brands' counsel attributed the MORs'

lateness to his own excusable neglect.[78] Counsel stated that his failure to file the MORs on time

was due solely to a serious and unexpected medical issue that had befallen his son.[79] The Brands'

counsel put Mrs. Brand on as a witness, and Mrs. Brand testified that she submitted all necessary

information for the late MOR to her attorney well in advance of the court's deadline for filing

MORs.[80]

The *Brand* court discussed the difference between a motion to reconsider under Rule 9023

and Rule 9024[81] before analyzing whether the Brands' alleged neglect was excusable under the

---

[73] *Id*.
[74] *Id*.
[75] *Id*.
[76] *Id*.
[77] *Id*.
[78] *Id*. at *2.
[79] *Id*.
[80] *Id*.
[81] The Court will address the different standards under a Rule 9023 motion and a Rule 9024 motion in the next section of the opinion; the Court has determined that SAL and MAYA's cases do not meet either standard for reconsideration.

*Pioneer* factors.[82] The *Brand* court determined that the neglect was excusable, noting again that Mrs. Brand submitted the MOR to her attorney well before the deadline, and the Brands' attorney was only late in filing the MOR as a result his son's unexpected medical emergency.[83] The court also noted that the Brands had complied "with every requirement of the Court other than timely filing MORs."[84] Finally, the *Brand* court stated it would have granted the motion to reconsider due to "extraordinary" circumstances, even if the Brands' counsel's neglect was not excusable, based on the specific facts present in that case.[85]

The facts of *Brand* differ in four key respects from SAL and MAYA's bankruptcies. First, Mrs. Brand had timely submitted the completed MOR to her attorney well in advance of the MOR deadline.[86] Mr. Dennett, the representative of both SAL and MAYA, did not send signed copies of the February MORs to the Debtors' attorney until March 21, 2024,[87] which was already past the March 20, 2024 deadline.[88] SAL and MAYA's MORs were going to be late no matter what action their attorney took.

Second, counsel's delay in *Brand* was due to the medical emergency of an immediate family member.[89] SAL and MAYA's counsel did not provide any type of emergency, medical or otherwise, that might explain the delay in filing the MORs well before the March 20, 2024 deadline or any time between March 21, 2024 and March 27, 2024.[90]

---

[82] *Brand*, 2021 WL 2946145, at *3.
[83] *Id.*
[84] *Id.*
[85] *Id.*
[86] *Id.*
[87] Debtor's Exhibit 3, offered and admitted at the April 26, 2024 hearing.
[88] Local Court Rule 2015(b).
[89] *Brand*, 2021 WL 2946145, at *2.
[90] While the Debtors' attorney was in Court on another matter on March 21, 2024, the Court does not consider that fact sufficient to establish excusable neglect when considering the totality of the circumstances of the neglect in these two cases.

Third, SAL and MAYA's representative did not complete the MORs on time *and* was roughly two months delinquent on payment of UST quarterly fees. Two independent deadlines were violated, instead of one.

Fourth, the Agreed Orders provide that SAL and MAYA could request an extension of such deadlines from the UST or file a motion to extend deadlines, and there was no evidence that SAL or MAYA even attempted to utilize these options that were firmly within their control.

The Court declines to set the precedent that the Debtors' failures to comply in these cases constitutes excusable neglect. Doing so would effectively nullify deadlines set by this Court, discourage parties from entering into agreements, call into question the reliability and authority of the bankruptcy court, and cast doubt on the integrity of the bankruptcy process. A deal is a deal and—absent excusable neglect—the Debtors are bound by the deal they made with the UST as set forth in the Agreed Orders. The Agreed Orders are valid and enforceable Orders of this Court. Allowing the Debtors relief from the terms of the Agreed Orders under the facts and circumstances of this case would undermine both the authority of the UST and this Court.

For the reasons stated above, the Motions to Extend Deadlines due to excusable neglect under Rule 9006 are DENIED.

**2.    The Motions to Reconsider conversion shall both be denied because the Debtors have not met their burden under either Rule 9023 or 9024.**

The Federal Rules of Civil Procedure (the "FRCP") do not specifically provide for motions for reconsideration.[91] A reconsideration motion "may be considered either a Rule 59(e) motion to alter or amend judgment or a Rule 60(b) motion for relief from judgment or order."[92] Those two

---

[91] *CARBO Ceramics, Inc. v. Bd. of Tax Assessors for Wilkinson Cnty. Ga. (In re CARBO Ceramics, Inc.)*, No. 20-31973, 2024 WL 505159, at *1 (Bankr. S.D. Tex. Feb. 8, 2024); *see Shephard v. Int'l Paper Co.*, 372 F.3d 326, 328 n.1 (5th Cir. 2004).
[92] *CARBO Ceramics*, 2024 WL 505159, at *1.

rules are "made applicable to bankruptcy proceedings under Federal Rules of Bankruptcy Procedure 9023 and 9024, respectively."[93]

While both the applicable case law and SAL and MAYA's pleadings suggest that the Debtors' Motions are made only under Rule 9023, the Court has analyzed the Motions to Reconsider under both Rules 9023 and 9024.[94] For the reasons set forth below, the Court finds that SAL and MAYA simply have not satisfied their burden under either Rule.[95]

### A. The Debtors provided no evidence that could satisfy the Rule 9023 standard.

Under FRCP 59(e),[96] amending a judgment is appropriate: (1) where there has been an intervening change in the controlling law; (2) where the movant presents newly discovered evidence that was previously unavailable; or (3) to correct a manifest error of law or fact.[97] The Debtors provided no evidence to support any of the three requirements of FRCP 59(e). The Motions are primarily focused on excusable neglect and matters of equity, both of which are only relevant under FRCP 60.[98] Based on the foregoing, the Motions to Reconsider are therefore DENIED to the extent they request relief under Rule 9023.

### B. The evidence presented in this case does not meet the standard necessary for the Court to reconsider under Rule 9024.

FRCP 60(b)[99] provides six reasons a court may relieve a party or legal representative from

---

[93] *Id.*

[94] *See Shephard v. Int'l Paper Co.*, 372 F.3d 326, 328 n.1 (5th Cir. 2004) ("If the motion is filed within ten days of the judgment or order of which the party complains, it is considered a Rule 59(e) motion; otherwise, it is treated as a Rule 60(b) motion."); *but see Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6 F.3d 350, 353 (5th Cir. 1993) ("[Movant]'s Motion for Reconsideration is both a Rule 59(e) motion to alter or amend a judgment and a Rule 60(b) motion for relief from judgment.").

[95] To the extent applicable, the Court incorporates its findings and conclusions above on "excusable neglect" under Rule 9006 to its discussion of Rule 9023 and Rule 9024.

[96] Federal Rule of Bankruptcy Procedure 9023 incorporates Federal Rule of Civil Procedure 59 into bankruptcy proceedings.

[97] *Demahy v. Schwarz Pharma, Inc.*, 702 F.3d 177, 182 (5th Cir. 2012).

[98] *See* Case No. 23-10736, ECF No. 287; *see also* Case No. 23-10737, ECF No. 271.

[99] Federal Rule of Bankruptcy Procedure 9024 incorporates Federal Rule of Civil Procedure 60 into bankruptcy proceedings.

a final judgment or order:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.[100]

The Debtors urge the Court to find that their neglect in missing the relevant deadlines—which were specifically set forth in the Agreed Orders and agreed to—is excusable. The Court finds that FRCP 60(b)(1) is the only provision that may provide the Debtors' relief, as the facts of the Debtors' cases do not fall under FRCP 60(b)(2) through (5)[101] and do not involve the "extraordinary circumstances" associated with relief under FRCP 60(b)(6).[102] Additionally, the Debtors moved for relief on the grounds of excusable neglect, so they may not seek relief under FRCP 60(b)(6).[103]

### i. The case law supports holding that the Debtors' conduct in this case does not merit relief under FRCP 60.

When neglect is the basis of a motion under FRCP 60(b)(1), the movant has the burden to convince the court that the neglect was excusable.[104] The Court finds that neglect was the reason

---

[100] FED. R. CIV. P. 60.

[101] The Debtors moved for relief under FRCP 59(e) in their pleadings and cited excusable neglect as the basis for reconsideration. No separate argument for relief under FRCP 60(b)(2) through (5) was pled and no evidence was offered.

[102] *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005) ("[O]ur cases have required a movant seeking relief under Rule 60(b)(6) to show 'extraordinary circumstances' justifying the reopening of a final judgment.") (citing *Ackermann v. United States*, 340 U.S. 193, 199 (1950)).

[103] *See Hess v. Cockrell*, 281 F.3d 212, 215 (5th Cir. 2002) (finding that the reason for relief set forth in Rule 60(b)(1) cannot be the basis for relief under Rule 60(b)(6)). For clarity, the Debtors technically moved for relief under FRCP 59(e) in their pleadings, but then cited excusable neglect as the basis for reconsideration. No separate argument for FRCP 60(b)(6) relief was pled and no evidence was presented.

[104] *See Rogers v. Hartford Life & Acc. Ins. Co.*, 167 F.3d 933, 939 (5th Cir. 1999) (citing *Baez v. S. S. Kresge Co.*, 518 F.2d 349, 350 (5th Cir. 1975)).

that the Debtors missed the applicable deadline. However, for the reasons discussed in Part 1 above, the Court holds that SAL and MAYA's neglect in this case is not excusable under *Pioneer*.

The Fifth Circuit has set forth standards for what constitutes mistake and excusable neglect within the context of FRCP 60(b)(1) and made it clear that "gross carelessness, ignorance of the rules, or ignorance of the law" are insufficient bases for FRCP 60(b)(1) relief.[105] In addition, "a court would abuse its discretion if it were to [grant the relief sought] under Rule 60(b)(1) when the reason asserted as justifying relief is one attributable solely to counsel's carelessness with . . . the applicable rules of court."[106]

In this case, the neglect was committed by SAL and MAYA's authorized representative's failure to timely prepare MORs and timely pay the UST quarterly fees (*and* to a lesser extent their counsel, although the evidence was unclear as to what counsel's actual role was in preparing the MORs and paying the UST fees). The Debtors' own carelessness or ignorance of the deadlines they agreed to—deadlines unarguably present in the Agreed Orders signed by this Court—are not sufficient grounds for relief under FRCP 60(b)(1).

The Debtors argue that the unpublished Fifth Circuit case of *Razvi v. Dallas Fort Worth Int'l Airport*, No. 21-10016, 2022 WL 4298141 (5th Cir. Sept. 16, 2022)[107] supports their argument against conversion. In *Razvi*, the plaintiff failed to timely file a certificate of interested persons as required by Northern District of Texas Local Rule 3.1, 81.2, and Federal Rule of Civil Procedure 7.1.[108] The district court dismissed Mr. Razvi's case, and the dismissal was effectively with

---

[105] *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6 F.3d 350, 357 (5th Cir. 1993); *see Pryor v. U.S. Postal Serv.*, 769 F.2d 281, 287 (5th Cir. 1985); *see also Matter of Thompson*, 823 Fed. Appx. 280, 281 (5th Cir. 2020) (quoting *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6 F.3d 350, 357 (5th Cir. 1993) (unpublished)).

[106] *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6 F.3d 350, 357 (5th Cir. 1993).

[107] This unpublished opinion is not precedent except for the limited circumstances set forth in 5th Circuit Rule 47.5. While the SAL and MAYA bankruptcies are outside of the case's limited precedential value, the Court has decided to distinguish *Razvi* for clarity.

[108] *Razvi v. Dallas Fort Worth Int'l Airport*, No. 21-10016, 2022 WL 4298141, at *1 (5th Cir. Sept. 16, 2022).

prejudice because the statute of limitations for Mr. Razvi's action had run.[109] Mr. Razvi filed a motion to reconsider pursuant to FRCP 60(b)(1), the district court denied the motion, and Mr. Razvi appealed.[110] The Fifth Circuit noted that Mr. Razvi's failure to timely file a certificate of interested persons was the first time he violated a deadline in the proceedings.[111] The Fifth Circuit reversed the district court, holding that the facts of Mr. Razvi's case did not warrant what was effectively a dismissal with prejudice.[112]

There are three key distinctions between SAL and MAYA's bankruptcies and *Razvi*. First, the failure to file the MORs and timely pay UST quarterly fees is *not* the first deadline missed by the Debtors in this case. The UST sought the Agreed Orders in the first place because the Debtors failed to adhere to the Court's deadlines in the beginning of their cases. The Debtors have been sanctioned for failing to meet other deadlines as well.[113] Furthermore, the Court's conversion to chapter 7 based on the violation of the Agreed Orders is squarely within the Court's statutory authority under 11 U.S.C. § 1112(b)(1). Section 1112(b)(1) states "on request of a party in interest, and after notice and a hearing, the court shall convert a case under [chapter 11] to a case under chapter 7 . . . for cause . . . ."[114] In relevant part, § 1112(b)(4) states that "cause" includes: (1) a failure to comply with an order of the court, (2) a failure to satisfy timely reporting requirements, and (3) a failure to pay filing fees under title 28.[115] In other words, there is a clear statutory basis to convert or dismiss SAL and MAYA's bankruptcy cases for the specific behavior that occurred; not so in *Razvi*.

---

[109] *Id.* at *6.
[110] *Id.* at *1.
[111] *Id.* at *4 ("This case involves a single calendaring error, not repeated failures to comply with the rules.").
[112] *Id.* at *7.
[113] Case No. 23-10736, ECF No. 126 at 2; Case No. 23-10737, ECF No. 115 at 2.
[114] 11 U.S.C. § 1112. The Court held a hearing on the Motions to Reconsider on April 26, 2024.
[115] 11 U.S.C. § 1112.

The second key distinction between *Razvi* and SAL and MAYA is that SAL and MAYA's cases have already been substantially litigated. SAL and MAYA's cases are nearly eight months old, and the Court has held numerous highly contentious hearings on matters ranging from discovery disputes to motions to convert. In contrast, Mr. Razvi's case was dismissed after violating one deadline in the early stages of litigation.[116] Additionally, SAL and MAYA's cases are not being dismissed, they are merely being converted. SAL and MAYA will still be entitled to the protections of the Bankruptcy Code, albeit under the chapter 7 trustee's supervision and other safeguards that come with a chapter 7 case.

The third key distinction between *Razvi* and SAL and MAYA is that granting SAL and MAYA's Motions would result in significant prejudice to the UST and other parties in interest for the reasons previously discussed herein. In sharp contrast, the *Razvi* court found an "absence of prejudice" to the non-movant.[117] The Supreme Court in *Pioneer* identified the danger of prejudice as the first factor to consider when evaluating excusable neglect.[118] Failing to file MORs and pay UST fees has a substantial negative impact on the ability of the UST to do its job; the UST's job is to safeguard the bankruptcy process, and the UST has determined to seek conversion of SAL and MAYA's cases pursuant to the Agreed Orders. The UST would certainly be prejudiced were the Court to overrule the terms of the Agreed Orders and compromise the UST's ability to enforce deadlines set out in agreed orders.

---

[116] *Razvi,* 2022 WL 4298141, at *1.

[117] *Id.* at *3 ("Even though the absence of prejudice is not in itself determinative, a district court must still consider it in relation to the other factors and surrounding circumstances.").

[118] *Pioneer*, 507 U.S. at 395. However, this Court acknowledges that no single *Pioneer* factor is more important than the others. *See In re CJ Holding Co.*, 27 F.4th 1105, 1114 (5th Cir. 2022) ("The weight of persuasive authority counsels us against giving the prejudice factor disproportionate weight. But neither do we extend our precedent here to hold that any other *Pioneer* factor is more important than the others.").

### ii. Applying the Fifth Circuit's multi-factor test for relief under FRCP 60 yields the same result.

The Fifth Circuit has identified seven factors that should guide a court's evaluation of a motion to reconsider under FRCP 60(b):

(1) That final judgments should not lightly be disturbed;
(2) that the Rule 60(b) motion is not to be used as a substitute for appeal;
(3) that the rule should be liberally construed in order to do substantial justice;
(4) whether the motion was made within a reasonable time;
(5) whether—if the judgment was a default or a dismissal in which there was no consideration of the merits—the interest in deciding cases on the merits outweighs, in the particular case, the interest in the finality of judgment, and there is merit in the movant's claim or defense;
(6) whether there are any intervening equities that would make it inequitable to grant relief; and
(7) any other factors relevant to the justice of the judgment under attack.[119]

The only factors in the Debtors' favor are (2) and (4). The Motions do not appear to be substitutes for appeal and they were filed within five days of the Court's Conversion Orders. However, the rest of the factors weigh heavily against the Debtors. Factor (1) clearly favors the UST for reasons previously discussed. Factor (3) favors the UST, because it would be unjust to let a party violate an Agreed Order of the Court without consequences. Factor (5) favors the UST because the Agreed Orders were an agreement on the merits of the Motions to Dismiss. Factor (6) weighs in favor of the UST because the Agreed Orders were an agreement on the merits of the Motions to Dismiss and there are no "intervening equities" that would make it inequitable to grant relief. Finally, factor (7) weighs in favor of the UST because there are no significant factors that would make the enforcement of the terms of the Agreed Orders unjust. The Debtors argue that the Court should reconvert their cases to chapter 11 because they were close to voting on a plan and have cured their deficiencies. However, this equitable argument does not outweigh the importance of the Court

---

[119] *Edward H. Bohlin Co., Inc. v. The Banning Co., Inc.*, 6 F.3d 350, 356 (5th Cir. 1993).

27

enforcing the Agreed Orders, holding parties to the terms of the deal they agreed to, protecting the integrity of the bankruptcy process, and upholding the sanctity of the Court's Orders.

3. **Setting aside the Agreed Orders in these circumstances would deprive the UST of the benefit of its bargain and contradict public policy.**

The Court's analysis would not be complete without briefly addressing the significant impact of essentially invalidating the underlying Agreed Orders. Bankruptcy courts frequently enter agreed orders in cases ranging from no-asset individual debtors to large businesses in chapter 11. Indeed, agreed orders are a necessary and fundamental part of the prompt and expeditious nature of bankruptcy proceedings. If the Court were to reconsider the Agreed Orders based on the alleged excusable neglect in the SAL and MAYA bankruptcies, it would undermine the authority of the Court and discourage parties from utilizing agreed orders in future bankruptcy proceedings. As the Bankruptcy Court for the Southern District of Alabama articulated:

> Enforcement of court orders is essential to the efficient administration of bankruptcy cases. This Court's docket is generally filled with hundreds of cases per week. If all or even a majority of matters required full evidentiary hearing or trial, it would create a backlog and interfere with the normal docket flow of the Court. Additionally, many matters coming before this Court can easily be resolved by competent and diligent counsel. Hence, agreed orders are encouraged and routinely entered. The efficacy of such orders depends largely on the enforcement thereof. . . . To relieve one party of its obligations under an agreed order is to deprive the other party of the benefit of its bargain. Furthermore, failure of the Court to enforce agreed orders would likely have a chilling effect on settlements and only serve to proliferate more litigation. Hence, the Court acknowledges the strong public policy considerations supporting enforcing agreed orders and finds them applicable to the instant case.[120]

This Court concurs with the Alabama court's conclusion. Additionally, this Court agrees that "relief under [FRCP] 60(b) is 'circumscribed by public policy favoring finality of judgments and termination of litigation.'"[121] If the Court granted the Debtors' Motions to Reconsider based on

---

[120] *In re Mohajer 12 Corp.*, No. 18-2674, 2021 WL 287805, at *4 (Bankr. S.D. Ala. Jan. 22, 2021).
[121] *Blue Diamond Coal Co. v. Trs. Of UMWA Combined Benefit Fund*, 249 F.3d 519, 524 (6th Cir. 2001)

the facts of this case, agreed orders regarding deadlines would essentially be useless and the only thing achieved would be to allow the Debtors to escape a freely negotiated settlement. That outcome would be contrary to the judiciary's "policy favoring the settlement of disputes and the avoidance of costly and time-consuming litigation."[122]

As discussed above, the Debtors' explanation for the violations is essentially just miscommunication and disorganization.[123] Importantly, the Debtors' own actions (or failures to act) caused them to miss the deadlines; this failure was entirely within the control of the Debtors and not because of any other party.[124] Both counsel and the Debtors were explicitly aware of the consequences of violating the deadlines in the Agreed Orders. They did so anyway. The Debtors did not cure their mistake until the UST filed its Certificate of Non-Compliance. When a previously entered Agreed Order explicitly lays out the consequences for missing deadlines, missing those deadlines without sufficient justification constitutes gross carelessness that makes relief under FRCP 60(b)(1) inappropriate.[125]

For the reasons set forth above, the Debtors' Motions to Extend and Reconsider are DENIED.

## IX.     CONCLUSION

The Court holds that the deadlines for SAL and MAYA to file their February monthly operating reports and pay UST quarterly fees should not be extended, because SAL and MAYA

---

(quoting *Waifersong Ltd., Inc. v. Classic Music Vending*, 976 F.2d 290, 292 (6th Cir. 1992)).

[122] *Kukla v. Nat'l Distillers Products Co.*, 483 F.2d 619, 621 (6th Cir. 1973); *see also Massachusetts Cas. Ins. Co. v. Forman*, 469 F.2d 259, 261 (5th Cir. 1972) ("'Settlement agreements are highly favored in the law and will be upheld whenever possible . . . .'") (quoting *D. H. Overmyer Co. v. Loflin*, 440 F.2d 1213, 1215 (5th Cir. 1971)).

[123] Case No. 23-10736, ECF No. 287 at 3; Case No. 23-10737, ECF No. 271 at 3.

[124] It is the Debtors' responsibility to prepare and sign the MORs, and it is the Debtors' responsibility to timely pay the quarterly UST fees. Typically, counsel will provide guidance, but does not fill out MORs or send checks to the UST.

[125] *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.,* 6 F.3d 350, 357 (5th Cir. 1993) ("Gross carelessness, ignorance of the rules, or ignorance of the law are insufficient bases for [Rule] 60(b)(1) relief.").

failed to establish that their neglect was "excusable" pursuant to Rule 9006(b)(1) and *Pioneer*.

The Court further holds that it will not reconsider the orders converting SAL and MAYA's bankruptcy cases to chapter 7, because SAL and MAYA's arguments and evidence do not satisfy the standards for reconsideration under Rule 9023 or Rule 9024.

**FOR THE REASONS SET FORTH HEREIN, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:**

1. The SAL Motion to Extend and Reconsider is DENIED;

2. The MAYA Motion to Extend and Reconsider is DENIED;

3. For the reasons set forth above, the Court will enter separate orders in the SAL Bankruptcy and MAYA Bankruptcy denying the SAL Motion to Extend and Reconsider and denying the MAYA Motion to Extend and Reconsider.

# # #